Step up and there are several appellees in this case I know. I assume that you've worked out how you're going to split your time. If you're going to split your time, let us know anyway. We'll call the case. Case number 08-3392 TWL Enterprises v. John Freda. Counsel's. Good morning, justices. My name is David Audley and I will be making the oral argument on behalf of the appellant Harris Bank. Good morning, Your Honor. I'm Richard Rockstein on behalf of Dualtown Appellate. Anybody else going to argue? Yes, Your Honor. Jim Dash, DASH for Centerpoint Properties Trust. Okay, what are you doing over there? Good morning, Your Honor. I'll explain. Okay. I don't really care where you sit. I thought you might probably be over there, but you don't have an oar in this river, do you? I'm in Switzerland, Your Honor. You don't have a dog in this fight, really? I don't have a dog in their fight. Okay, I see your point. Okay, fine. Mr. Dash, I understand where you're coming from, I think. Your Honor, I'm Robert Bergen on behalf of the Del Mar Custody Metal Family. Okay, and are you going to orally argue, too? I agree. Okay, have you guys worked out how much time? Oh, Your Honor, for the appellant, 15 minutes. I'll reserve a bit for him. Fine. And you, the other three, you're going to split your time? I anticipate, Your Honor, needing about 90 seconds unless there are questions from the public. And you? I'll be brief, Your Honor. Okay. I expect to be brief, Your Honor. Okay, everybody's going to be brief. They always promise they're going to be brief, don't they? Of course, sometimes it's our fault. Yes, most of the time it's our fault. Very well. Thank you. I think you can safely assume we're familiar with your briefs, and you can begin any time you wish. Thank you. Good morning, Justices, and may it please the Court, counsel. On behalf of Harris Bank, I'm presenting the oral argument this morning, the appellant. The basic thrust of Harris Bank's appeal from the trial court's decision below was the trial court's granting of relief pursuant to a motion filed pursuant to Section 2-1401. Are you going to argue this issue about whether it was a motion or a petition, or do you really care? Your Honor, I'm going to move right forward into the issue. Okay. You have the right to raise the issue, but I'm not sure that it – Right, Judge. I'm going to get right to the substance. Fine. Understanding, Your Honor, and the precious time we have here, the real thrust of the appeal is that the trial court judge, we believe, made legal error in determining that the technical failure acknowledged by Harris Bank in serving the initial motion for summary judgment on Dual Temp's president versus its counsel of record in violation of Illinois Supreme Court Rule 11a made any subsequent order entered as and against Dual Temp void versus voidable, which is obviously both – this appellate court has made the determinations, the Illinois Supreme Court has made the determinations. For example, this appellate court in the Flores case says if there's a violation of a Supreme Court rule, especially in the sense of service of process, that it makes the order voidable but not void. And the reason that the trial court spent so little time and the justices have read the judge's opinion from the bench, it's all of a page, not that you can't give an opinion in a page, but half of that is discussing that Harris Bank is not guilty of any untoward conduct in the trial court's opinion. But he simply said and ruled that if you violate 11a, that's it. That means that any subsequent order entered is void, and so therefore the trial court voided – But in this case, correct me if I'm wrong, but by not serving the attorney, I know you have outlined why the attorney could have done something, but essentially by not notifying the attorney, then the party lost the right to adjudicate the lien. No, Your Honor. We do not believe so. And the reason for it – You don't believe that they lost the right, or do you suggest that they sort of forfeited the right by not responding or something? The latter, Your Honor. I apologize. Is it disputed that the attorney was never served? It is not disputed that the attorney was not served with the initial notice of motion in motion. So you're conceding you have avoidable order, and you're also conceding that taking away the fault issue, the party never really had the opportunity to adjudicate the lien. That's where we disagree, Your Honor. And the reason for it is the following. All right. Let's say it this way. That lien was never adjudicated. Or it was adjudicated against them. That's correct, Your Honor. I can't say that it was not adjudicated. It was adjudicated against them. You're right. And it was adjudicated, Your Honor, in a number of ways in the following manner. And if I could step back for a second and just give you the chronology of events. We're basically arguing that even though they didn't get notice, and you admit that, they had actual notice because of the circumstances surrounding the litigation. Oh, absolutely. And that the lawyer knew all along what was really going on. Absolutely. That's your position. Yes, Your Honor. So actual notice as opposed to notice under the Supreme Court rule. Yes, Your Honor. And that's indeed what the Flores case and what the intermarriage of Collins case, all of the cases say. And, again, the chronology of events was as follows. If I can just summarize. In October of 2006, Harris Bank filed its counterclaim for foreclosure and named Dooltemp specifically as a defendant that it was seeking to foreclose out its lien and served Dooltemp's counsel. Counsel had that. Dooltemp was then given 30 days to respond to that complaint through November of 06. Never responded, and I might as well just get right to the point, has never responded and never did respond to Harris's allegations as and against Dooltemp. The argument against that, that was made below and was made before this panel, is that there was a misapprehension or misunderstanding that Dooltemp was just named as a nominal defendant. And that just can't be under the Illinois Mortgage Foreclosure Act, which specifically says here's the form to follow, here's what you allege, here's how you name a mechanic's lien claimant, and if they don't respond and you foreclose them out, their lien is extinguished. So to suggest that they were simply named as a nominal defendant simply, I don't believe, you know, passes the small test. And in addition, Dooltemp also used the same form when they brought their lien claim to try to foreclose as well. Incidentally, just as a, because you skipped over the standard of review. Yes, Your Honor. To rewind the film just a little bit, are you suggesting that this, because of the nature of the way the trial judge got to the 1401 ruling, that we really have a de novo review here? Yes, Your Honor. If this was weighing some facts, if this was having an evidentiary hearing where you actually. . . Are you sure you want that? Well, Your Honor, from this perspective. . . Doesn't that give us the opportunity to revisit the fraud issue? Your Honor, if indeed the court believes that that's something appropriate, then the court will take that over.  But you think it ought to be de novo based on the trial judge's ruling that this was a void order, rather than a voidable? Than voidable. I have to at least. . . That's what the law states. Okay. And that's why we presented it. Of course, in the alternative, if the court believes that it's an abuse of discretion determination that the appellate court has. . . Well, that's a pretty steep hill for you to climb, isn't it, if it's an abuse of discretion on the granting of a 1401? It's certainly steeper, but I don't think it's a steep one, given the specs of this case, Your Honor. And especially if you look at, for example. . . Shouldn't generally, though, voidable orders be able to be attacked within eight months of their entry? I mean, voidable does give us a sense that there's something erroneous about the order, doesn't it? Yes, Your Honor, except if you talk about eight months. If you look at the Flores case, for example, and that was a case where the party did not get notice of that there was going to be an arbitration hearing, and they only waited two months after they became aware of it to bring the petition. And this court reversed the trial court granting the 21401, and it specifically went through and said anywhere from one month to six months is found to be an inordinate amount of time. And especially under these circumstances. . . Was the voidable-voidness issue at all at play there? Yes. Oh, indeed, that was the key. Voidable? That it was simply a voidable? Simply voidable. That's where Flores actually looked at another Illinois Supreme Court case and said it's been discredited, the void versus voidable, Your Honor. All right. To get back then to the chronology of events, indeed the responses to the motions for summary judgment were served on counsel, and Harris served the reply in support of summary judgment on counsel. And indeed in the reply said because there's been no responses whatsoever to Harris's complaint, summary judgment should be entered as and against, among others, Doolton, all those parties that have not responded. And indeed the parties that did respond, Harris Bank acknowledged and agreed that summary judgment could not be entered against those two lien claimants, which were Commonwealth Mechanical and Super Electric. They took the time to respond. When the briefing schedule on the motion for summary judgment was entered, counsel was in the courtroom. That is not disputed. So they understood that a motion for summary judgment was being briefed, and they received all of but for the original motion for summary judgment. The day that the summary judgment order was entered, that in paragraph two said summary judgment is hereby entered as and against, and among other named lien claimants, Doolton of Illinois, it was faxed to counsel of record. And that was in June. That was the June 27th order? Yes, Your Honor. It was handwritten, wasn't it? It was handwritten, Your Honor. Obviously, you know, when you're in the trial court and you're in front of a judge. Oh, I understand. I understand. But it's, you know, the dispositive order in this case is handwritten. Except it wasn't. Well, the reason I say handwritten, there's nothing wrong with a handwritten order. Although this particular one includes them down at the bottom off in the corner, and you really got to squint pretty hard to see that they're included in it. Which has been his argument all along. You know, the progression of this case is such that you begin to wonder whether or not there was a deliberate attempt to keep them in the dark. Now, that was just, you know, I mean, there's some smoke there. I'm not saying there's a fire, but there's some smoke there. Judge, all I can tell you is that if this was a deliberate attempt to keep somebody in the dark, it was the most terrible attempt at it. Okay. And as an officer of the court, we just did not engage in that. And certainly the trial court did not determine that. We did not believe that was there at all. But to your point about a handwritten order, that is the norm. There were a number of lien claimants that were smaller print that were there. Right. They were kind of scrunched up in there. Right. Right. But if you receive a summary judgment order that says summary judgment is entered against, and you knew the briefing schedule had been set, you'd receive the reply, and it says then summary judgment is entered against you, would you not take some sort of action? And even further then, the judgment of foreclosure and sale was entered that repeated that the summary judgment had been entered as and against the prior ones, except for commonwealth, mechanical, and super electric. Then we noticed up the foreclosure sale and served. There's no dispute that we served everything else appropriately and dealt with it appropriately. And then what happened, unfortunately here is, or fortunately, is in the normal course of events, Harris Bank was the successful bidder at sale, obtained title to the property, got clean title other than for super electric and commonwealth, so the title company obviously felt that it had been done appropriately, and it was sold to Centerpoint, who now takes the property. Harris takes a $3.5 million loss. This is not some sort of an attempt to all of a sudden grab some monies here that otherwise would be a profit or some sort of a windfall to Harris Bank. One of their arguments is that the lien, had it been known to the bona fide purchaser, would have impacted the sale price. Yes, just speculative, I suppose, but certainly something that had it been disclosed to them would have impacted upon what they were willing to pay for it. Certainly. Or if they knew they were assuming a $600,000 in some lien, that would have impacted on the offer they would have made. Yes, Your Honor, but it also would have, Harris Bank then would have gone when it went to bid on its, it was allowed to credit bid up to $8 million. Right. Now, of course, if it knew that it had to deal with yet another third lien claim, that would have impacted on their probability to, so it dealt both sides of that coin, Your Honor, to be honest with you, and certainly that's our opinion, that we lost out on the ability to deal with that. And that's why, again, the whole concept of we were trying something to move it sideways without somebody noticing. When somebody stepped to the forefront, Commonwealth Electrical and Super Electric, we absolutely acknowledged and put them in and accepted them out of all of this process. To suggest... I think one of his arguments is that here, in favor of granting the 1401, is that, you know, how can you possibly be prejudiced by this? Because to reinstate the validity of the lien is only taking away from you the money that you got when you sold it to the third party and putting you back where you would have been had you granted the lien. So it's sort of a wash. Well, Your Honor, all of the 21401, I don't believe... What he's basically saying is there's $650,000 or so you wouldn't have gotten from the purchaser had they known about the lien. That is absolutely speculative at best and frankly... Of course it is. And frankly, we would have liked to have had that opportunity. Again, the 21401 petition requires both a meritorious defense or a claim, which, again, the trial court never even got to. It never even determined whether they had a legitimate claim or not. Well, they still haven't determined that, is that? But he didn't even... If we were to affirm the trial court, this still goes back for a hearing on the validity of their lien. They would still have to prove it up. They would still have to prove it up. But what I think you need to do is follow the structures of 21401, which require mandatory the elimination, diligence, and a meritorious defense. None of those were determined whatsoever, or as far as we can tell from the judge's opinion, even considered because he found as a threshold matter that because of the failure to serve the one notice of motion in motion on the attorney of record... What about his decision to carve out the final order so as to exclude the bona fide purchaser and focus simply on you? Did he do that? I don't think so, Your Honor, because, again, the Illinois mortgage foreclosure law is attempting to be final. It wants finality. Right. This is title to real property, which is something that is true. Well, he understood the part that he could. There was no way he was going to be able to hold the ultimate purchaser line. But he carved it out based on their pleadings and now just put Harris Bank on the spot. Right, and I simply don't think you can do that. Unwind it in part, I guess is what I'm saying. Unwind it in part. You have to unwind it all. What's your best case for the fact that he can't do that? I guess, Judge, my best case is there's no case that says he can't. I know. I thought that's what you were going to say. I looked myself. Yes, Your Honor, and respectfully, we're not going to throw something at this court, obviously, that we don't believe has at least some tangential relationship. But there's nothing that suggests, even as the judge was struggling with it, said quasi-equity powers. Sort of along the lines when he granted an $800,000 bond. He actually granted, Your Honor. Was it a bond, actually, that he required? He required a bond. Yes, and what do you want to say about that? There is nothing that we could possibly see that was presented that would require a bond to be posted. Harris Bank is a large financial institution. There was no showing by any party here that they could not otherwise satisfy. Did Harris, though, initially suggest that or something? No. Isn't that suggestion made then in their brief? It is. If you read the transcript, Your Honor, please. Your reply indicates that you did not. Did not. As a matter of fact, if you read the final paragraph, and I can read it but I don't tend to want to read the transcript to you, Your Honor, it says that he says, and I'm going to require a bond because he figured that he needed to replace the property that had been sold with some sort of race, some sort of body. So that's assuming that they would prevail. Absolutely. It was the cart before the horse, and it was asking for relief that the appellee hadn't even asked for. We then, of course, had to deal with the trial court and say, well, what kind of a bond do you want us to post? And then there was argument about that. This was not something that Harris Bank offered up. Okay. We need to really move on. Do you want to sum up? Sum up is that as a threshold matter, the trial court was in legal error because of the void versus voidable. And despite the fact that maybe we would end up down with a hearing on a 214-01 appropriately, that's what we need to do here because then we can flesh out and see what the trial court's reasoning was on diligence. So your argument would be that at the very least we ought to send it back for an evidentiary hearing? Yes, Your Honor. You never asked for one, did you? Yes, we did, Your Honor. They argued that we didn't. In our SIR reply, we absolutely, on page three of our SIR reply, it's in the record. We've noted it in our footnote in our reply brief that we did ask for one. But isn't your first relief to simply vacate the order granting? Yes, yes. Alternatively, you wouldn't have a problem with a hearing, an evidentiary full-blown evidentiary hearing on whether or not they stated grounds for a 14-01. Yes, Your Honor. And the vacature of the bond that was set. Yes, Your Honor. This is not a trick question. What's the difference between the evidentiary hearing that you're requesting and the hearing you got? Sorry, Your Honor, the last part. I apologize. I didn't. What's the difference between an evidentiary hearing and the one you got? What were you deprived of doing in the hearing you got? We weren't allowed to present any live testimony. Did you ask? We asked for an evidentiary hearing to present both. That was in your SIR reply? Yes, absolutely, absolutely. Okay. I've always had a problem with what's an evidentiary hearing when lawyers are sitting there or standing there in front of a chancellor arguing all kinds of evidentiary issues. And, you know, if it's not an evidentiary hearing, I suppose that means you have to swear witnesses, I guess. And we never got to that because the judge cut us off and said, it's void, and that's it. Okay. I think I understand your position. Thanks a lot, Counsel. Thank you. Mr. Reifstein, right? Yes. I'm Richard Reifstein on behalf of Dual Family Appellate. If it please the Court, Counsel. Supreme Court Rule 11A is not aspirational. It's a notice of underlying summary judgment motion that was missing here. Throughout the pendency of this lawsuit, the key was always missing. The key that Harris was seeking to deprive Dual Temp of its claim to the property. Now, do you really believe that or is this just one of these really mammoth cases involving lots of litigants, lots of paperwork, and you're suggesting that Harris deliberately set out to carve out a situation where you would be deprived of a valid lien? Why would they do that when all they're going to do ultimately as the holder of the mortgage is pass on any liabilities that they have to whoever the ultimate purchaser is? Why would they deliberately single you out? Judge, I don't know that Harris deliberately singled out Dual Temp. What we do know is that the notice and the motion for summary judgment against Dual Temp, the part that asked for the lien to be dissolved, was never served. I never responded to it. I never knew it. The part that... The president of the company was on the service list, right? He did not give me an affidavit that he didn't receive the notice. That's correct. Their affidavit indicates there was service. Was there an affidavit of service or not from Harris? There was an affidavit of service from Harris. On the president of the company. On the president of the company. All right. But there's at least a question of fact then whether since he countered and said he didn't count. Were you present in court when they say that the response to the summary judgment was filed by other parties? Yes, I was. Were you present when the reply was also filed by Harris? Judge, I was never unnoticed that my client... I know. I'm just asking if you were present in court. Yes, I was present in court, Judge. Okay. And did you get a copy? I mean, they say you got a copy of all these things. You don't deny that you got a copy of the June 27th order. They faxed it to you. Yes, Judge. And as the court earlier pointed out, the order is practically illegible and it doesn't say that the lien of dual temp is being... It doesn't say that the lien of dual temp was discharged. It does not. All right. We expected this property to go to sale exactly the way it did. We supported the sale of the property. Because that's the only way you're going to get your money. Well, that's exactly right. But the sale to a modified purchaser will have money to pay the lien. That's exactly right. The summary judgment order granting the foreclosure does not adjudicate your lien. The order that you received does not adjudicate. Yes, that's my position exactly. All right. And I would add further that the order of foreclosure itself was never circulated either before or after. You stressed that very strongly in your brief. It's the key that would have put me on notice that the rights of my client had been vacated. Harris claims that Rule 11A is a technicality. Judge Quinn says it may be a technicality, but it's a very important one. In terms of relief for you, what about their argument that, at the very least, this ought to go back for an evidentiary hearing, which they're entitled to? And they say they asked for it and didn't get it. Judge, I don't fear another judgment order. So that the 1401 order was really improvidently entered or prematurely entered because there wasn't an opportunity for Harris to fully develop their position before he entered the 1401 ruling. Well, Judge, the whole issue takes place as to the conduct of the attorneys who were present and who were speaking before Judge Quinn. We don't fear an evidentiary hearing. I mean, if it were sent back for that purpose, you wouldn't object? No. What about this bond that was entered? Do you have any authority that would permit a judge to enter a bond before a lien has been adjudicated to preserve or in some way require Harris to put up $800,000? My view is that Judge Quinn believed that Dual Temp had a meritorious claim. But that doesn't get to the heart of the matter. What authority is there for a judge to be entering what it seems like is a pre-judgment attachment here with this $800,000? I mean, it's kind of unheard of. Well, you tell me where this authority would come from. I have two responses. One, one need only turn on the news to see the financial calamity presently in force. In the course of this litigation, the liability might be extinguished by bankruptcy. That exists and has always existed. You admit that you have not yet established in court your right to that money. I admit that. I don't think that the financial climate today would warrant giving this judge authority to be granting bonds in a case that hasn't been litigated. And I don't think that you can suggest that the, you know, that possibility always exists, that by the time you finish a case that the, you know, the money won't be there. But that doesn't allow a judge to in advance require the posting of a bond to secure a judgment that hasn't been granted. So, I mean, unless you have some piece. Judge Quinn explained his reasoning saying. He thought he had authority, some quasi-equitable authority or something. Didn't he say that? He believed that it was necessary to balance the security that a lien holder would have in the property against some other security to parallel that right, which was no longer available, with the building having already been sold. I think that Judge Quinn believed that something was massively wrong here, that there was a high degree of likelihood that Dual Temp would be able to prosecute and recover on its mechanics lien, that Dual Temp was prejudiced to the tune of 658,000 ballots. And I believe the judge ruled properly. Should the court now sustain the trial court hold-in, all that would happen is that Dual Temp and Harris would be returned to the place where they were. It would preserve the status quo. Thank you. Thank you, counsel. Mr. Dash. He's going first? It doesn't matter. You're the bootstrapper, right? I am, Your Honor. How are you? Interesting bootstrap, interesting metaphor, what I'd like to say to the court in opening it. I didn't mean to denigrate your position at all. No, no, no. But it is an interesting position to be in. It is. It is, Your Honor. But where I'm going on that is this. When I was listening to the President speak last night, Uh-oh, uh-oh. And he remarked, things that came to mind were his remarks about full employment, returning servicemen and servicewomen, and the rule of law. Now, the rule of law, he said, was that the rule of law is if those who obey the rule of law can expect to be protected by the rule of law. And when I and my fellow Vietnam servicemen returned, and we matriculated to schools, many trade schools, many of them went to trade schools, my clients, I represent a handful of guys that own Telmar Custom Metal Fabricators, union journeymen, sheet metal workers. We were brought into this by Dualtip, and we were bootstrapped to Dualtip, so there's no doubt about it. But the rule of law is what is really before the court here regarding Rule 11, and I think that has been well briefed. Judge Quinn was overly, overly prudent in reviewing the record. There were delays. The record shows that he wanted to go back. Things I raised during argument, he wanted to go back and review those, the report of proceedings. He allowed Mr. Wadley to file that certify, so that he states, and it's in our brief, that he wouldn't rule in a vacuum. Wouldn't rule in a vacuum. Now, one of the cases that we cite, the Edward Lumber case, reminds me of my days as a young lawyer in the early 70s, mid-70s, a period before Judge Bulla in the motion court. And Judge Bulla stated, as our Supreme Court has stated, that the Mechanics Leaning Act is an act that must be liberally construed to provide a remedy. It's a remedial act. And my clients have a right to say that that act will be liberally construed and applied to give them the remedy so that they get paid for a job they did five years ago and they're owed $165,000 to $170,000. There's an admission right there on the record, isn't there, by Dual Temp, that a portion of their lien includes money they feel they owe you? Absolutely, Your Honor. That admission probably would protect you in any future litigation if they get their $600,000 and some odd thousand and then turn around and try to stiff you. I agree, and I appreciate the court stating that. And Judge Quinn remarked about, in addressing the nuances of the Mechanics Leaning Act, said that there has to be a constructive trust, at least created, to protect people. Might not even be necessary. But that was part of his ruling, which was a very comprehensive, fair ruling. Not only in upholding the rule, enforcing the Rule 11 violation, Justice Bulandic and our Supreme Court have said on numerous occasions that our Supreme Court rules have the full force and effect of law. So Rule 11 is violated. That puts us back. There's a status quo on the lien. We're part of that lien. The sum of the parts equals the whole. That's the essence of it. It protects us. But I do want to say two other things, Your Honor. You participated in most of the oral argument, did you not? I did, Your Honor. Is there any question in your mind that Harris has preserved their right to an evidentiary hearing? You know, there is a question, Your Honor. And I just want to refer to two things here when I was listening to the colloquy between the Court and Mr. Audley. First, if I may, let's just start at the caboose and work up to the engineer regarding the thing about the bond. My reading at Volume 13 of the Report of Proceedings, Page 11, was that Harris suggested a payment bond. That's in my brief at Page 8. That was my reading of the record. Now, regarding the evidentiary hearing, Judge Quinn, being the fine judge that he is and the pragmatist that he is, to try to get to the core of this thing, he said, well, what can we do here perhaps to obviate an evidentiary hearing? And I'm looking at the top of eight. Just if I may, Your Honor. Your reading from the record? Just my brief, Your Honor. What I'm saying is that I'm going to give him, this is Judge Quinn, Mr. Audley, a chance to file a surreply. That's at Page 29 of the record. Ironically, these are my words, ironically this colloquy pertained to affidavits in any evidentiary issue which might be avoided with the filing of amended affidavits. Harris acquiesced. In the quotes there, no objection, Your Honor. No objection, Your Honor. That was Mr. Audley's remark at Pages 30 to 31 of the record. Okay. I see your reference. All right. So we thought this was resolved. I think we should go back. I don't think there was a need for an evidentiary hearing, but that's really our position on this, Your Honor, and we respectfully ask that the Court affirm Judge Quinn's order. Okay. Thank you. Mr. Dash. May it please the Court. Your Honor, it's Jim Dash for Centerpoint Properties Trust. Your Honor, Centerpoint's position in this litigation or interest in this litigation is very, very limited and specific. It is the undisputed, third-party, bona fide purchaser of this property. You're only here to make sure you don't get pulled back into the orbit, right? Exactly, Your Honor. I don't think anybody wants you back in orbit. And I would be very pleased if – Unless there's a case offer that says you have to be pulled back into the orbit, and nobody's cited one to us yet, I don't think. Not that I'm aware of, Your Honor. We have two procedural arguments and one substantive that any arguments to pull Centerpoint back in have been waived. Oh, I richly agree. Does anybody have any questions for Mr. Dash about his position that he's basically out of this case if we uphold the rulings, even if we don't uphold them? That's right. It's actually either whether it's affirmed or reversed. We just didn't want to get pulled in accidentally or because of some collateral argument that might result in that. Whatever the result – whatever the effect of Centerpoint's permanent title may be shouldn't affect that title. That's our only position. Unless there are any questions. We thank you for your brief, Mr. Dash. Thank you so much. A final word, Mr. Rodley. Thank you, Your Honor. I'd like to just point the panel out to our appendix, page number 154. It's in the record, page 92, where it is judge – the trial court judge is the one who said that the fairest result is that Harris, pursuant to its quasi-equity type of powers I have as a chancellor, to secure the monies that the claim for the lien asserts. That's what he said. That would be like a bond or something like that or a letter of credit or something. Since Harris is a financial institution, I think that can be accomplished. I think, gentlemen, that's probably the fairest result. I responded by saying, well, Your Honor, if that's what you're going to order, then I will respect it. I did not offer up a bond on behalf – And the point you're making is that until they have an absolute award of 600 and whatever in hand, you shouldn't have to post a bond. Any bond at all. Just as to that point, obviously you've read the briefs. I will not go over any further points. Gentlemen, thank you very much for your briefs. The briefs were well done, and the rather novel issues that were raised by this interesting case were well argued. We thank you. The case will be taken under advisement. You want to take a break or keep going? You want to keep going? You want to take a break? Let's keep going. Keep going. Mary, you can call the next case. Case number 08-3603, Tanya Goldhorn v. Mark Kevalen and Paige Atul.